UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RESTAURANT SUPPLY SOLUTIONS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:04-0786 ) JUDGE ECHOLS ) |
| DEAN LEISCHOW, individually and d/b/a THE LEISCHOW GROUP, INC., LGI ENERGY SOLUTIONS, INC., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM

Pending before the Court is Defendants' Motion for Partial Summary Judgment (Docket Entry No. 49), to which the Plaintiff responded in opposition, and Defendant filed a reply. In an Order entered December 14, 2005, the Court referred Plaintiff's Motion for Sanctions, relating to a discovery dispute, to the Magistrate Judge for ruling. In the same Order, the Court allowed Plaintiff a period of time after the Magistrate Judge's ruling to supplement its response to the Motion for Partial Summary Judgment, and the Court also allowed Defendants to file a five-page reply brief.

The parties filed their supplemental pleadings by the dates contemplated in the December 14 Order. In addition to filing a five-page reply brief, however, Defendants submitted an Affidavit of Dean Leischow (Docket Entry No. 105) and an Affidavit of William Christopher Penwell, with several attachments (Docket Entry No. 106). The Court will not consider the substance of Defendants'

1

affidavits and attachments because Defendants did not seek the Court's permission to file them.

## I. FACTS AND PROCEDURAL HISTORY

On September 1, 2004, Plaintiff Restaurant Supply Solutions, Inc. ("RSSI"), filed this diversity action against Defendants Dean Leischow ("Leischow"), individually and doing business as The Leischow Group, Inc., and LGI Energy Solutions, Inc. RSSI is a Tennessee corporation with its principal place of business in Brentwood. RSSI markets various products and services to restaurant chains, restaurant systems, and food service companies. Shane Stapleton ("Stapleton") is founder and President of RSSI.

Leischow is a Minnesota citizen who conducted business as The Leischow Group, Inc. LGI Energy Solutions, Inc., was incorporated under Illinois law in May 2002 and has its principal place of business in Wayzata, Minnesota. Leischow is President, Chief Executive Officer, and a shareholder of LGI Energy Solutions, Inc.

In December 2001, Stapleton met with Leischow and Abby (Swisher) Kirkwood, a representative of Entech Utility Service Bureau, to discuss Leischow's business and whether RSSI could introduce the services of The Leischow Group, Inc. ("LGI") to the food service industry and offer clients utility management services. (Docket Entry No. 100, Stapleton Aff. ¶ 2.) Stapleton attests that, during the meeting, Leischow represented to him that LGI was processing 150,000 utility invoices per month and that numerous large corporations were Leischow's clients. (Id.) Leischow told Stapleton that he subcontracted with Entech to

2

provide some of the services offered, specifically online reporting. Stapleton later received a list of forty-four (44) companies which Leischow claimed were his clients. Leischow indicated he could pay clients' utility bills timely with no late fees, save clients money by negotiating lower utility rates, save clients money by reviewing and correcting utility tariff rates, and provide clients with monthly savings reports and a variety of other online reports. (Id.)

The parties negotiated and executed a Work for Hire Agreement ("the Agreement"), dated February 8, 2002 (effective February 6, 2002) under which RSSI agreed to represent LGI in the food service marketplace as an independent contractor to promote LGI's Utilities Online Bill Auditing and Tracking System, Utility Procurement Services, energy broker management, and Facility Engineering Assessments and to solicit potential customers for LGI from food service businesses in exchange for a commission. Stapleton attests he relied on Leischow's representations and would not have entered into the Agreement but for the representations. (Stapleton Aff. ¶ 2.) Defendants deny that any misrepresentations were made to induce Stapleton and RSSI to enter into the Agreement.

The Agreement contained no geographic parameters. RSSI's engagement included soliciting food service industry customers across the country, particularly chain restaurants and distributors with restaurant and/or warehouse locations in multiple states.

The Agreement provided for payment to RSSI as follows:

3

> **2. PAYMENT FOR SERVICES.** LGI will pay RSSI a commission fee based upon fifty percent (50%) of the Gross Margin derived on the sales of LGI's products and services (unless specifically noted and mutually agreed to in advance on an account sales margin schedule basis) less any previously issued retainers. [Example omitted.] LGI will detail a sales margin schedule from which commissions will be based and provide it to RSSI. Should the cumulative monthly commissions be less than $5000 per month, LGI will pay RSSI the amount of the shortfall to be deducted from future commissions. [Example omitted]. Commissions will be earned by RSSI in the month the revenue from the sale is received by LGI. Payment of all retainers will be contingent upon RSSI meeting monthly activity levels, which shall be mutually agreed upon in advance between LGI and RSSI. Compensation shall be payable monthly, 10 days after the end of each month. In the event that an account does not pay LGI for the service, RSSI will not be compensated for the unpaid portion of the invoice.

(Docket Entry No. 44, Agreement at 1.) The Agreement also provided that, in the event LGI terminated the Agreement for cause, "[a]ny compensation due RSSI for commissions related to ongoing contractual relationships developed by RSSI will be paid at the rate in effect prior to termination for as long as LGI maintains the service contract with the customer." (<u>Id.</u> at 2.)

On April 22, 2002, Leischow presented a power point presentation to managers of Outback Steakhouse with Stapleton in attendance at the meeting.[1] According to Stapleton, Leischow

---

[1] Stapleton states that he located a copy of this (mis-filed) power point presentation on December 14, 2005, after the close of discovery, while going through his files looking for something else. (Stapleton Aff. ¶ 3.) He attaches a copy of the power point presentation to his Affidavit executed on December 28, 2005, in support of his Supplemental Response to Defendants' Motion for Partial Summary Judgment, which the Court allowed in its December 14 Order. In the reply brief filed on January 4, 2005, LGI did not raise any issue concerning the untimely disclosure of this evidence. Thus, the Court will consider it for purposes of the summary judgment motion.

4

presented LGI's capabilities and services to Outback Steakhouse in the manner Leischow wanted RSSI to represent LGI to other potential clients. (Stapleton Aff. ¶ 3.)

During the presentation, Leischow represented to the client that LGI had $8 million in sales, fifty (50) employees, twenty (20) engineers on staff, and forty (40) more "on 1099s." (Id.) Page three of the power point presentation indicated that LGI manages 150,000 utility accounts per month, and that LGI's clients included General Motors, Delphi Automotive, Meijer Foods and Barclays Bank. (Id. & Ex. A.) Stapleton attests that, at the time, he did not know these representations were untrue, and he relied on them in making future presentations to other clients. (Id. ¶ 3.)

The Defendants deny that any such affirmative misrepresentations were made. Leischow testified at his deposition, however, that many of the clients he represented to be his own were actually clients of Entech, and that, when LGI's relationship with Entech ceased in 2004, LGI's relationship with Entech's clients also ended. (Docket Entry No. 81, Leischow Depo. at 129-140.) Leischow insisted that he represented the companies were clients of both Entech and LGI. (Id. at 134.) He further testified that, at the time LGI contracted with RSSI, LGI did not have in-house capability to process utility invoices, nor did LGI plan to have such a capability. LGI represented that Entech was its partner and would process the invoices, but LGI did not promise RSSI that the LGI-Entech relationship would never change. (Id. at 36.) During the deposition, Leischow conceded that, during the

5

first meeting of Stapleton, Leischow and Kirkwood, Stapleton was told that Entech could process 150,000 invoices per month. (Id. at 37.) Leischow had seen Entech's operation and had no reason to believe that was not their volume level. (Id.) Before contracting with RSSI, however, Leischow knew that Entech processed only about 750 invoices per month for LGI. (Id. at 36-38.)

According to Stapleton, LGI and LGI Energy Solutions, Inc. could not provide the services Leischow had represented they could provide. (Stapleton Aff. ¶ 4.) Stapleton began receiving complaints from clients, including Cooker's, AFC, Outback Steakhouse, Jack-in-the-Box, Bruegger's, and California Pizza Kitchen. "They all wanted to know why things were not getting done as promised and in a timely manner." (Id.) Several stores had to close temporarily because LGI did not do what it contracted to do, (id.), presumably because utilities were turned off for nonpayment. Three companies, Bruegger's, Cooker's and Jack-in-the Box, cancelled their contracts as a direct result of LGI's incompetence and inability to perform services. (Id.) Outback Steakhouse reduced the number of units LGI serviced by approximately fifty percent (50%) because of non-performance, and CPK reduced the management fee paid by over fifty percent (50%) because LGI did not perform as it contracted to perform. (Id.) Consequently, Stapleton attests he suffered damage to his professional reputation, damages in lost commissions, and damages in lost future revenues and commissions. Additionally, he has been unable to secure additional consulting business with certain of the clients

6

because of the damage done to his relationships with them. (Id.) Stapleton further avers that he believes Leischow intentionally misstated revenues and overstated expenses in order to reduce the commissions owed to RSSI. (Id. ¶ 5.) Stapleton retained an expert witness, Robert V. Whisenant, to review the documents Defendants produced in discovery in an attempt to calculate RSSI's damages. (Id. ¶ 6.) Defendants have also retained an expert, Gregory A. Jenniges.

It is undisputed that, during the first year of the Agreement, RSSI's monthly commissions were less than the $5,000 retainer. In approximately mid-2003, RSSI's monthly commissions started exceeding $5,000 per month, and RSSI had earned enough in commissions by September 2003 to repay fully to LGI its retainer amounts from all previous months. RSSI admits that, assuming LGI correctly reported its revenue, all commissions LGI owed to RSSI for the period February 2002 to September 2003 were paid in full. But RSSI disputes that revenue was correctly reported, resulting in underpayment of commissions.

On December 16, 2003, Leischow and Stapleton signed a letter as "confirmation of how we will specifically handle our commission payments to RSSI as we move forward for management fee and savings fee determinations." (Docket Entry No. 55, Ex. B.) The letter stated that LGI would

> pay commissions based upon a flat margin of 30% to RSSI beginning December 1, 2003. This commission rate will continue through the month of February provided there are no substantial (7%) changes to the RSSI account portfolio. Should there be substantial (7%) changes to

7

>    the projected Revenue, LGI will recompute the margin
>    level to determine if a change in Margin % is warranted.
>    When and if the management fee and the savings revenues
>    are as projected (*See attached revenue projections,
>    Book3.xls delivered by LGI to RSSI on November 18th*) for
>    March, the existing RSSI account portfolio margin will
>    increase to approximately 50% and if this proves to be
>    accurate, at that time LGI will change the RSSI
>    commission payment plan to a flat rate of 25% of sales on
>    all accounts, from that date forward. Demand projects
>    are paid at 50% of the predetermined gross margin rate.
>    All other provisions of Paragraph 2, Payment For
>    Services, are still in effect.
>
>    Any new business developed will pay at the rate of 25% of
>    sales effective as of December 1, 2003.

(Docket Entry No. 55, Ex. B.)

In addition to their factual disputes over whether LGI made misrepresentations to RSSI, the parties and their expert witnesses remain in sharp disagreement about whether LGI paid in full all commissions due and owing to RSSI on RSSI-generated contracts. The experts' disagreement includes differences of opinion about whether LGI accurately reported revenue received, whether LGI made offsets to revenue of proper, applicable costs and expenses, and whether LGI applied the proper percentage of gross margin to be paid to RSSI.

Further, these disputes must be viewed in the context of RSSI's ongoing allegation that LGI has failed to provide requested discovery documents as ordered by the Magistrate Judge that would permit RSSI's expert to calculate properly the nature and amount of RSSI's damages. LGI insists that it has turned over all documents as required and that, from those disclosed documents, LGI's own expert has determined LGI overpaid commissions to RSSI. With trial

8

on the horizon, the parties continue to spar over the disclosure of reports and supplemental reports of experts. (Docket Entry No. 99, Attachment #3, RSSI's "Damage from Inability to Fulfill Contracts"; Docket Entry No. 106, Exhibit AA, Supplemental Report of Gregory A. Jenniges.)

In its Complaint, RSSI raised claims for breach of contract, fraud in the inducement to contract, fraudulent misrepresentation, and intentional, bad faith refusal to pay commissions, in violation of Tenn. Code Ann. § 47-50-114, which, if proved, would entitle RSSI to treble damages, attorney's fees and court costs.

Defendants concede there are material factual disputes remaining for trial on RSSI's breach of contract claim. Defendants move for partial summary judgment asserting: (1) RSSI's fraudulent misrepresentation claims are precluded as a matter of law by the breach of contract claim; and (2) RSSI cannot prove the elements of reasonable reliance or damages to establish a claim of fraudulent misrepresentation.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether

9

there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

#### A. Breach of contract and fraud

Because RSSI claims it was induced by fraud to enter into the Agreement, Defendant contends RSSI is required to elect between two remedies: treating the Agreement as voidable and suing for rescission of the Agreement or treating the Agreement as binding and suing for contract damages, citing Vance v. Schulder,

10

547 S.W.2d 927, 931 (Tenn. 1977). RSSI has not asked for rescission. According to Defendants, when asked to identify its contract damages, RSSI's consistent response has been that it seeks unpaid commissions and lost past and future revenue. Moreover, RSSI has not posited its claims for breach of contract and fraud as alternate theories; thus, RSSI is precluded from seeking double recovery of the same amounts under two separate legal theories, relying on Hickson Corp. v. Norfolk Southern R.R., 260 F.3d 559, 567 (6th Cir. 2001) (citing Shahrdar v. Global Housing, Inc., 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998)).

Finally, Defendants contend that RSSI's claim of fraudulent inducement to contract is barred by paragraph 9 of the Agreement which states: **"ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written." Defendants rely on Center for Digestive Disorders and Clinical Research, P.C. v. Calisher, 2005 WL 2086035 at *3-4 (Tenn. Ct. App. Aug. 30, 2005) (unpublished), in which the Tennessee Court of Appeals held that a more explicit "entire agreement" clause barred a fraudulent inducement claim.

The Court concludes that the clause at issue in Calisher can be distinguished factually from the clause at issue in this case. The clause in Calisher stated (emphasis added):

> *Entire Agreement* This Agreement contains the entire agreement concerning the subject matter of this Agreement between the parties. It supersedes all other agreement (sic) between them concerning the subject matter of this Agreement. <u>Neither party has made any representations</u>

11

> with respect to the subject matter of this Agreement, nor any representations including the execution and delivery of the Agreement, except the representations specifically stated.

Id. at *3. Language similar to that underlined above is not included in the clause at issue in this case. The parties' Agreement here simply states that "there are no other promises or conditions *in any other agreement* whether oral or written." The clause is silent as to whether there were any representations made with respect to entering into "this Agreement," as was the situation in Calisher. Therefore, the Court concludes that Calisher is inapplicable.

RSSI may be able to prove at trial that it suffered damages caused directly by Defendants' alleged fraud that are different from the damages allegedly suffered as a result of breach of contract.[2] See Shahrdar, 983 S.W.2d at 238 (observing plaintiff is entitled to recover damages for promissory fraud if he can show he incurred damages beyond those awarded for breach of contract). "The injured party should be compensated for the actual injuries sustained by placing him in the same position he would have occupied had the wrongdoer performed and the fraud not occurred." Id. Also, Leischow has been sued individually, and his liability

---

[2] RSSI contends that its expert has preliminarily determined RSSI sustained damages in the total amount of $1,162,497. RSSI claims that damages resulting from the inability to fulfill contracts and lost commissions are at least $90,959. The expert also determined RSSI lost $318,208 in miscalculated commissions. RSSI further claims to be entitled to one-half of LGI's arbitration award against Jack-in-the-Box in the amount of $753,330. (Docket Entry No. 99, Plaintiff's Supplemental Memorandum at 5.)
12

must be determined separately from LGI's liability under the Agreement.

Stapleton attested that he and RSSI suffered damage to business reputation as a consequence of Defendants' alleged misrepresentations and failure to perform. Stapleton averred that, in addition to the revenue and unpaid commissions he lost under the Agreement, he also was unable to obtain other consulting business from the involved clients because of the damage done to his business relationship with them as a result of RSSI's association with LGI.

If, as Defendants contend, RSSI proves the same damages under several overlapping legal theories, RSSI will be entitled only to one recovery. See id. But where it appears, taking the evidence in the light most favorable to RSSI, that RSSI may be able to prove damages caused directly by Defendants' alleged fraud that are different from, and in addition to, damages caused by the alleged breach of contract, RSSI will be entitled to recover under both contract and fraud theories. Moreover, the issue of bad faith (which may amount to fraud) impacts whether RSSI is entitled to claim exemplary damages in an amount that does not exceed three times the amount of the commissions owed to RSSI under Tenn. Code Ann. § 47-50-114. Because genuine issues of material fact exist for trial on the issue of damages, Defendants' Motion for Partial Summary Judgment on these grounds will be DENIED.

13

## B. Elements of misrepresentation

Under Tennessee law, the elements of fraud or fraudulent misrepresentation are: (1) an intentional misrepresentation with regard to a material fact; (2) made knowingly and with a fraudulent intent; (3) upon which the plaintiff reasonably relied and suffered damage; and (4) which relates to an existing or past fact or, if the claim is based on promissory fraud, the misrepresentation embodied a promise of future action without the present intention to carry out the promise. First Nat'l Bank v. Brooks Farms, 821 S.W.2d 925, 927 (Tenn. 1991); Stacks v. Saunders 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990). The terms, "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous. Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 904 n.1 (Tenn. 1999).

Defendants contend that RSSI will not be able to prove the element of reliance. Stapleton specifically attested, however, that he relied to his detriment on representations made by Leischow and that he would not have entered into the Agreement but for the representations. Also, Stapleton attested that he relied on Leischow's guidance and instruction when he made presentations to clients using the same representations Leischow made in the presentation to Outback Steakhouse, not knowing that the representations were untrue. Leischow appears to have conceded in his deposition that certain misrepresentations about LGI's client list were made to RSSI. Stapleton's attestations and Leischow's testimony are sufficient to create a genuine issue of material fact

14

for trial as to whether Stapleton can prove the element of reasonable reliance.

### IV. CONCLUSION

Taking all of the facts in the light most favorable to RSSI, the Court concludes that RRSI has generated genuine issues of material fact for trial on the elements of reasonable reliance and damages on the fraud claims. Accordingly, Defendants' Motion for Partial Summary Judgment (Docket Entry No. 49) will be DENIED.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE